IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

YAN YAN,                          )
                                  )     No. CA
        Plaintiff,                )
                                  )     **Jury Trial Demanded**
        v.                        )
                                  )
PENN STATE UNIVERSITY,            )
ZHI-CHUN LAI, LI-LUN HO,          )
                                  )
        Defendants.               )

## COMPLAINT

## Jurisdiction

1.  Plaintiff, Yan Yan, invokes this Court's jurisdiction by virtue of 28 U.S.C. §1331.  She brings claims under Title IX of the Education Act, 20 U.S.C. §1681, claims under the Civil Rights Act, 42 U.S.C. §1983 and claims under the Rehabilitation Act, 29 U.S.C. §704.

## Parties

2.  Yan Yan is a female from mainland China descent.  She resides in this country pursuant to student visas.

3.  The Defendant, Penn State University ("the University"), is a corporate/educational entity, which provides post-secondary and graduate school education.  Its main place of business is University Park, Pennsylvania.

4. The Defendant, Zhi-Chun Lai, is an adult individual who is a professor at Penn State University. He resides in the Middle District of Pennsylvania.

5. The Defendant, Li-Lun Ho, is an adult individual who resides in the Middle District of Pennsylvania.

## Statement of the Facts

6. Yan Yan is a female who was born in China and who has lived in the United States for nine years.

7. Yan is in the United States by virtue of a student visa, and at the time relevant to this matter was admitted as a Ph.D. candidate to the Cell and Developmental Biology Graduate Program (CDB program) within the Huck Institutes of Life Sciences of the University.

8. Yan had previously been awarded a Masters Degree from the University's Genetics Program in 2007.

9. Yan was admitted to the CDB program on June 18, 2007. It was the expectation that Yan would complete studies no later than 5/31/2012.

10. In connection with her admission into the CDB program, Yan was also awarded graduate assistantship which would provide her a livelihood, as well as help cover her tuition.

11. At the time of her admission into the program, a plan was developed by virtue of which she would sit for a comprehensive

exam, which was projected to occur at some point during the summer of 2008.

12.   Yan began her research project in the Summer of 2007. Immediately, the Defendant Ho began harassing her.  The harassment was based upon her gender.  Ho's harassment at first was subtle. Ho initially asked Yan to perform work on his project.  When she declined, he provided a negative evaluation about her.  He advised her that she should not communicate with her advisor, Dr. Lai, because she was a woman, and Dr. Lai would not have time for her. He told her he did not want her in lab, because she was a woman. He would interfere with or disrupt her samples, and he would point at her, make gestures, and speak in a threatening tone.

13.   Ho also caused a substantial delay in Yan's research project.  He would not provide the necessary resources for her to work on her project.  At other times, he wrongfully accused her of interfering with his project and, on one occasion, threw away her research samples.  Many times he indicated that he felt prejudice against women in Plaintiff's position.

14.   The harassment was particularly serious on the evening of January 26, 2008, when Yan had to move a heavy $CO_2$ cylinder from one side of the lab to the other.  Ho refused to help and impeded her efforts.  Consequently, the cylinder, which was quite heavy, fell on her hand, breaking two fingers.  Ho sat and witnessed the entire spectacle, but at no time assisted Yan, who had difficulty

3

controlling the heavy cylinder.  He never offered to help.  Ho was the ostensible head of the lab.

15.   Yan reported the injuries that she suffered to the University and filed a claim for worker's compensation.  The injuries would have a profound effect on her ability to properly perform her Ph.D. work.

16.   The injuries sustained by Yan were to her right hand, which was her predominant hand.  In connection with her research work, she had to use her right hand to manipulate microscopic samples of fruit fly tissue.  Yan also was teaching several labs in connection with her teaching assistant position.  She had great difficulty writing or correcting exams and assignments.  Hence, the injuries suffered by Yan were significant and impaired her ability to work.  She experienced significant delay in recovering full use of her hand.  Her ability to use her right hand was significantly limited, constituting a disability as that term is used in the Rehabilitation Act.

17. Ho's harassment of Yan was severe and pervasive and his approach to her played no small role in her on-the-job injury.  The injury would eventually set back Yan's research significantly, because she had trouble working with her samples.

18.   Ho's harassment continued even after the accident.  He would grab items from Yan's left hand and intentionally carry boxes in such a way that Yan when was afraid that there would be another

4

accident.  He accused her of removing items from the storage area and made harsh and loud noises when Yan was in the lab.

19.  The conduct of Ho eventually caused Plaintiff to file a police report with the University police on February 21, 2008.

20.  After Yan reported Ho to the Campus Police, Yan was contacted by an individual from the Judicial Affairs Office.  The official, who never spoke with Yan previously, advised her that after speaking with Li-Lun Ho, an administrative directive to both Ho and Yan would be issued, directing each of them to have no contact with the other.  The administrative action was misplaced in that Yan had done nothing to Ho and, in fact, had been Ho's victim. The failure of the University to recognize fault compounded the discrimination and lessened Yan's stature in the eyes of those who would eventually grade her.

21.  The University's response to Yan's effort to stop Ho's harassment was inadequate, unreasonable, and arbitrary.  It had the affect of further impeding and limiting Yan's ability to work on her research project and carry out other activities associated with her Ph.D. candidacy, because she was seen as the problem, and there was no relief from the discrimination.  While Ho's harassment of Yan diminished, there was no justification for any directive against Yan.  The existence of the directive would eventually color subsequent events.

22.  Hence, the circumstances between Yan and Ho had a broader impact on Yan's continued participation in the graduate program at Penn State.  Shortly after the intervention of the Judicial Affairs Office,  Defendant  Dr.  Lai  precipitously  scheduled  Yan's comprehensive exam for May 1, 2008.  This date was too early and contravened  the  schedule  originally  contemplated.   It  was particularly prejudicial, due to Yan's hand injury.

23.  The scheduling of the exam was purposefully moved up to retaliate against Yan for contacting the police and reporting Ho, and for her interaction with the Judicial Affairs Office.  Under the original contract between Yan and the University, it was noted that the comprehensive exam "should take place during the summer of 2008."  Scheduling Yan's exam on May 1st was precipitous and presented many problems for Yan.

24. First, due to her injury, Yan's research had been set back.  Moreover, after she made the report to the police, Ho and Lai began giving her difficulty in connection with securing resources to conduct her work.  She was not given strains with which to conduct her experiments.  Resources were cut off so that she would not be able to attend to her experiments.  Though she asked for accommodations, none were given.

25. Yan protested the May 1, 2008, scheduling of the comprehensive exam on many occasions, advising Dr. Lai that his pushing forward the date of the exam would prejudice her.

6

26.    One of the principal reasons Yan protested the terms of the precipitous scheduling of the exam was because of the effect that her having broken fingers had on her research project and on her life in general.   She pointed out to Dr. Lai that the impairment had a profound effect on her ability to conduct her research and comprehensive exams, and made every aspect of her life more difficult.    However, Dr. Lai rejected these protests and continued with his implacable goal of scheduling the exams early with the goal that by doing so that Yan would fail.   There was no legitimate basis for scheduling the exam so early.

27.    Hence, Lai retaliated against Yan as a result of her having invoked the internal grievance procedures offered by Penn State to students who are grieved in one fashion or another. Consequently, Yan found herself having to take the exam on May 1st without adequate preparation, as a result of the discrimination of Ho and Lai's discrimination and retaliation.

28.    The panel which was gathered to judge Yan's progress decided to fail her.   She was not given a second chance, as is afforded to others.

29.    Comments were made to her by members of the panel that her isolation in the lab and her attitude played a role in her failure. The isolation was a product of Ho's harassment and Lai's anger at Yan's involving the resources at the University to curtail the harassment.

30.   Immediately upon notifying her that she had failed the exam, Lai directed her to stay away from the lab.  Sometimes students who do not perform well on the comprehensive exam are given the chance to retake it.  There is not always an expulsion from the program, but, instead, another opportunity to retake the exam.  However, Yan was given no such leeway.

31.   Yan pursued the internal appeal process of the University, seeking to set aside the failure.

32.   Eventually, in connection with her appeal, Yan pointed out that due to the work-related accident which had occurred on January 26, 2008, she had been unable to adequately perform her bench work for several months.  She pointed out that the timing of her comprehensive examination was shifted to a much earlier date than had been agreed upon.  She also pointed out that standards had been imposed upon her by the Committee, which were unfair, and were outside the scope of the comprehensive exam.  She also pointed out that during the entire time that Yan participated in the program, Dr. Lai had shunned her, refused her requests for tissue cultures to use in experiments, and refused to purchase other supplies necessary for Yan to fairly conduct her research.

33.   Eventually, Dr. Eva Pell, the Dean of the Graduate School, reversed Dr. Lai's decision to exclude Yan from the program at the beginning of August 2008.  However, Pell's remedy was superficial, at best, and not designed to give relief.  Pell

8

permitted Dr. Lai to reschedule the comprehensive exam for August 15, 2009, giving Yan only 15 days to prepare for the exam. Yan had been excluded from the lab since May 2nd. It would be impossible for Yan to successfully take the exam with only 15 days notice. Pell knew this, and the "opportunity" was simply a sham. Yan was unable to take the exam a second time and has been excluded from the Ph.D. program by the University.

## Causes of Action

### Count I

### Yan vs. Ho, Penn State University

### Title IX 20 U.S.C. §1681(a)

34. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. §1681(a).

35. Ho created a hostile work and educational environment for Yan. Ho's conduct was subtle, yet pervasive, severe, and regular. It clouded Yan's ability to properly perform her research. It took the form of denying Yan necessary materials, supplies, cultures and tissue. Overt steps such as destroying her samples set back her project, and his refusal to assist Yan when she was struggling with the $CO_2$ cylinder, all constituted sexual harassment, which violated

Title IX.  Additionally, Yan protested Ho's conduct and, therefore, when Dr. Lai began his campaign to exclude her from the program it was with the intent to retaliate against Yan for having protested Title IX violations.  This retaliation also violated Title IX.

36.  The University is a recipient of federal funds, and hence bound by the provisions of Title IX to be free from discrimination or retaliation.

37.  The conduct described above violated Yan's rights under Title IX.

38.  The conduct of Ho amounted to a Title IX violation, because Ho subjected Yan to a hostile work/educational environment.

39.  The conduct of Lai and the University compounded Ho's illegal conduct, because Lai retaliated against Yan for having complained about sexual harassment at Ho's hand.

40.  Dr. Lai's participation in the discrimination and retaliation against Yan took the form of scheduling her comprehensive exam at an early date and influencing the other panel members to fail Yan and not offer her any remediation.

41.  This purposeful discrimination and retaliation against Yan resulted in Yan being significantly injured.

42.  First, she was excluded from her Ph.D. program.  Second, she lost her graduate assistant positions and thereby lost income. Third, she suffered emotional distress, anxiety, and embarrassment and fear, resulting from her treatment by the University.

## Count II

### Yan v. The University

### Violation of the Rehabilitation Act

43.   The University is a recipient of federal funds and is a federal contractor.  Hence, it is bound to observe the requirements of the Rehabilitation Act.

44.   Yan's injuries entitled her to accommodations under the Rehabilitation Act and according to the policies and practices of the University relative to recognizing disabilities.  Hence, she possessed rights under 29 U.S.C. §704 of the Rehabilitation Act.

45.   After Yan broke her hand, she requested accommodations from the University.  Those requests were denied and there was no negotiation between Yan and the University concerning such accommodations.

46.   As a result of refusing to give Yan accommodations, the University forced Yan to sit for comprehensive exams earlier than was practically impossible, given the nature of her impairment.

47.   As a result of the consequence of these actions, Yan was unable to prepare for the exam, and, according to the officials who administered the exam, she failed.

48.   Yan suffered injuries as a result of this decision. First, she was excluded from her graduate program.  Second, she lost her graduate assistant positions and thereby lost income.

11

Third, she suffered emotional distress, anxiety, and embarrassment and fear, as a result of her treatment by the University.

## Count III

## Yan vs. Penn State University and Dr. Lai and Ho

## Violation of 42 U.S.C. §1983

49.  The University receives state and federal funding and is therefore a state actor for purposes of the requirements of 42 U.S.C. §1983.

50.  Dr. Lai and Ho also are state actors for purposes of this lawsuit.  Lai occupied an official position at the University and his treatment of Yan presupposed the power given him by the University to affect the course of her graduate studies.  Ho was the leader of Yan's lab.

51.  Yan exercised constitutional rights when she reported Ho to the University police, and raised claims of discrimination and retaliation.

52.  She also engaged in protected activity when she filed a notice of job related injury.

53.  In reporting Ho to the police, Yan was petitioning the government.  She exercised other first amendment rights, including filing the Worker's Compensation claim and protesting Ho's and Dr. Lai's harassment and retaliation.

54. Dr. Lai, who was acting under the color of state law, and the University retaliated against Yan to punish her for her first amendment activities in violation of 42 U.S.C. §1983.

55.   As a consequence of this retaliation, Yan was excluded from the graduate program and lost her graduate assistant job. Also, she suffered emotional distress, anxiety, and embarrassment and fear, as a result of her treatment by the University.

### Count IV

### Yan v. The University, Ho Li-Lun and Dr. Lai

### Violation of Equal Protection

56.  Ho, Lai and the University are state actors for purposes of 42 U.S.C. §1983.

57.  These Defendants violated Yan's right to equal protection because they discriminated and retaliated against her based upon her gender and her national origin.

58.  They also violated her equal protection rights when, for arbitrary and capricious reasons, they failed to follow their own policies concerning accommodations.

59.   Yan suffered injuries as a result of the Defendants' conduct.   First, she was excluded from her graduate program. Second, she lost her teaching assistant positions and thereby lost income.   Third, she suffered emotional distress, anxiety, and embarrassment and fear, as a result of her treatment by the University.

## Count V

## Discrimination on the Basis of National Origin and Race

60.   Yan is from mainland China.  Ho is from Taiwan.

61.   Ho harbored resentment based upon Yan's national origin and race, and thereby deprived her of rights secured to her by the Equal Protection Clause.  He made it clear on a number of occasions that Yan's national origin and race place a role in the treatment of her.

62.   Yan suffered injuries as a result of this.  First, she was excluded from her graduate program.  Second, she lost her teaching assistant positions and thereby lost income.  Third, she suffered emotional distress, anxiety, and embarrassment and fear, as a result of her treatment by the University.

## Relief

63.   Yan requests this Court assume jurisdiction over this matter and reinstate her to the Ph.D. program, direct Defendants to refrain from further discrimination and retaliation, and award her compensatory damages for the injuries she suffered, award her punitive damages against the individual Defendants, and provide all other appropriate relief, including attorneys fees and costs.

Respectfully submitted,


 /s/Edward A. Olds
Edward A. Olds, Esquire
Pa. I.D. No. 23601
1007 Mount Royal Boulevard
Pittsburgh, PA 15223
(412) 492-8975