**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| YAN YAN, | : | |
| | : | |
| Plaintiff, | : | No. 4:10-CV-212 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| PENN STATE UNIVERSITY, ZHI-CHUN LAI, and LI-LUN HO, | : | |
| | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

### August 3, 2012

Presently pending before the Court in this civil rights action is the Motion for Summary Judgment (doc. 67) of Defendants Penn State, Zhi-Chun Lai, and Li-Lun Ho. The Motion has been fully briefed (docs. 70, 79, 86) and is therefore ripe for our review. For the reasons articulated herein, we will grant the Motion in its entirety and enter judgment in favor of the Defendants on all counts of the Plaintiff's Amended Complaint (doc. 33).

## I.   PROCEDURAL HISTORY

The Plaintiff, Yan Yan ("Plaintiff" or "Yan"), commenced the above-captioned civil action with the filing of a Complaint (doc. 1) on January 26, 2010, asserting various causes of action against Defendants Penn State ("Penn State"), Zhi-Chun Lai ("Lai"), and Li-Lun Ho ("Ho"), collectively referred to herein as

"Defendants." The parties and the Court are intimately familiar with the protracted procedural posture of this litigation and we thus abbreviate that history, providing only the most pertinent portions thereof herein.

Since this action was initiated, the Plaintiff has twice filed amended complaints (docs. 16, 33). Following the resolution of Defendants' Motions to Dismiss (doc. 17) and our Order granting the same (doc. 21), Plaintiff filed the presently operative Amended Complaint (doc. 33). The four-count Amended Complaint asserts the following causes of action: hostile work environment in violation of Title IX against Defendant Penn State (Count I); retaliation and discrimination in violation of Title IX against Defendant Penn State (Count II); retaliation in violation of the First Amendment pursuant to 42 U.S.C. § 1983 against all Defendants (Count III); and discrimination in violation of the Equal Protection Clause pursuant to 42 U.S.C. § 1983 against all Defendants (Count IV).

On May 1, 2012, the collective Defendants filed the instant Motion for Summary Judgment (doc. 67) contemporaneously with a statement of facts (doc. 68), exhibits (doc. 69), and a brief in support of said Motion (doc. 70). Following several extensions of time granted to the Plaintiff, on June 29, 2012, the Plaintiff filed a brief in opposition (doc. 79) and a counter-statement of facts (doc. 80). The Plaintiff did not file any exhibits, documents, or other evidence in opposition to the

Defendants' filing. On July 20, 2012, the Defendants filed a reply brief (doc. 86), and the Motion is thus ripe for our review.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325.  Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).  An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).  The

non-moving party "cannot rely on unsupported allegations, but must go beyond

pleadings and provide some evidence that would show that there exists a genuine

issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).

Arguments made in briefs "are not evidence and cannot by themselves create a

factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent.*

*Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

However, the facts and all reasonable inferences drawn therefrom must be viewed

in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of*

*Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement

about the facts or the proper inferences that a fact finder could draw therefrom.

*Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982).  Still, "the

mere existence of *some* alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; there must be a

*genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477

U.S. at 247-48.

## III.   STATEMENT OF MATERIAL FACTS

The following facts are derived from the record and viewed in the light most

favorable to the Plaintiff in accordance with the standard of review applicable to a

motion for summary judgment. Due to the complexity of this litigation and the familiarity of the parties and the Court with the record, we briefly state the pertinent facts herein and supplement them as necessary with additional facts throughout  our analysis.

Plaintiff is an adult female of Chinese descent who has resided in the United States for the past eleven (11) years and at all relevant times pursuant to student visas. (Doc. 68, ¶ 1). Defendant Penn State is a state-related university providing both undergraduate and graduate programs. (*Id.* ¶ 2). Defendant Lai is a member of the Penn State faculty and the chair of Penn State's Cell and Development Biology ("CDB") program. (*Id.* ¶ 26). Defendant Ho was a senior lab member in Defendant Lai's lab during the relevant time period. (Doc. 80, ¶ 4).

Plaintiff was accepted into Penn State's Graduate Degree Program in Genetics in 2002; she deferred admission for one year because she was pregnant. (Doc. 68, ¶¶ 14-15). Plaintiff sat for and failed her first comprehensive exam in the Genetics program in August of 2005. (*Id.* ¶ 18).[1] Plaintiff passed the Genetics comprehensive exam on her second attempt in November of 2005. (*Id.* ¶ 19). In February of 2007, Plaintiff was terminated from the Genetics program; her

---

[1] Yan asserts that it is common that Ph.D students in the Genetics program require several attempts to pass the examination, specifically those students under her thesis advisor Dr. Chiang. While this "fact" is of questionable relevance, Plaintiff cites no evidence to support her assertion and we thus do not consider it part of the factual record.

termination letter advised that she demonstrated a lack of understanding of her experiments, an inability to interpret data, and an inability to make meaningful connections between data and her specific scientific purpose. (*Id.* ¶ 21).

Plaintiff then approached Dr. Hong Ma, then Chair of the CDB program, regarding applying to the program. (*Id.* ¶ 24). Plaintiff contacted several faculty members seeking permission to work in their labs; Defendant Lai agreed in May of 2007. (*Id.* ¶¶ 25-27). On June 18, 2007, Defendant Lai, Plaintiff, and Dr. Ma signed a written memorandum of understanding formally admitting Plaintiff to the CDB program. (*Id.* ¶¶ 28-29). Plaintiff was also granted a Teaching Assistantship ("TA") for the fall of 2007, a position which was renewed in the spring of 2008. (*Id.* ¶ 30).

In August of 2007, after learning of personal conflicts between Plaintiff and others in the lab, Defendant Lai suggested to Dr. Ma that Plaintiff might be better suited for another lab. (*Id.* ¶ 35). In November of 2007, Defendant Lai again raised concerns regarding Plaintiff's behavior. (*Id.* ¶ 37). Around this time, Plaintiff advised Defendant Lai that she believed others were interfering with her experiments, but did not name anyone in particular. (*Id.* ¶ 38).[2]

Defendant Ho was the senior-most member of Defendant Lai's lab at all

---

[2] Plaintiff contends that she advised Defendant Lai that it was Defendant Ho who had disturbed her experiments. However, she cites only to her Amended Complaint (doc. 33) in support of this proposition. Because pleadings themselves are not evidence, we do not consider this allegation a "fact" of record.

times relevant to the case *sub judice*. (Doc. 80, ¶¶ 40-42). Defendant Ho had no

responsibility for evaluating or grading Plaintiff and was not responsible for hiring

or firing within the lab. (Doc. 68, ¶¶ 40-42). Ho, as a favor to Defendant Lai and

because Defendant Lai did not have a lab technician, would order general supplies

for the lab. (*Id.* ¶ 106). All students were permitted to order their own experiment-

specific supplies and reagents as necessary. (*Id.* ¶ 107).

On the evening of January 26, 2008, Plaintiff and Defendant Ho were both

working in Defendant Lai's lab. (*Id.* ¶ 43). Plaintiff sought Defendant Ho's aid in

moving a heavy carbon dioxide cylinder for part of her experiment. (*Id.* ¶ 44).

Defendant Ho knew that proper safety protocol required using a cart to move the

heavy cylinder and thus refused to help Plaintiff move the cylinder without a cart.

(*Id.* ¶¶ 45-47).[3] Plaintiff dropped the cylinder, breaking two fingers on her right

hand and losing consciousness for approximately ten minutes. (*Id.* ¶¶ 48-49).

Defendant Ho attempted to assist Plaintiff with her injury until Plaintiff's husband

arrived. (*Id.* ¶ 50). Plaintiff contends that Defendant Ho left Plaintiff lay

unconscious on the floor without attempting to render aid until she regained

consciousness, but she cites to no record evidence to support this contention.

---

[3] Plaintiff contests this characterization and asserts that there were no such protocols in place and no cart in Defendant Lai's lab. Again, however, Plaintiff cites to no record evidence to support this proposition and we thus do not consider this unsubstantiated allegation to be a supported "fact."

Plaintiff filed a workers compensation claim and provided Defendant Lai with a physician's note placing her on modified work duty for two weeks. (*Id.*).[4] In late February of 2008, Plaintiff went to Penn State Police Services and filed a complaint. (*Id.* ¶ 54). Police Services referred the matter to judicial affairs on February 26, 2008. (*Id.* ¶¶ 55, 56). Karen Feldbaum of Judicial Affairs met with Plaintiff and her husband and spoke with Defendant Ho. (*Id.* ¶ 57). Neither the police officer investigating the complaint nor Ms. Feldbaum viewed Plaintiff's complaints or allegations as claiming gender-based discrimination or harassment and both concluded that the issue was one of interpersonal conflict. (*Id.* ¶ 63).

Plaintiff requested that Ms. Feldbaum issue an administrative directive to Defendant Ho, and Ms. Feldbaum determined that under the circumstances it was proper to issue a directive to both Plaintiff and Defendant Ho. (*Id.* ¶ 58). These directives are not disciplinary; they simply advise students not to have contact with one another. (*Id.* ¶ 59). Plaintiff admits that the alleged "verbal attacks" from Defendant Ho ceased subsequent to the issuance of the administrative directives, however she contends that her samples and experiments continued to be disturbed. (*Id.* ¶ 62; Doc. 80, ¶ 62). Plaintiff also contends that subsequent to her report,

---

[4] Plaintiff asserts that the modified work duty was extended until June of 2009, but once again provides no evidence to support this contention. (Doc. 80, p. 52). To the extent she cites to her own answers to Defendants' Interrogatories Numbers 11 and 16, the same are not before the Court and thus cannot be considered as part of the summary judgment record.

Defendant Lai explicitly prohibited Plaintiff's use of confocal microscopes necessary for her experiments, but cites no record evidence to support this claim.

Defendant Lai began discussing Plaintiff's comprehensive exam with her early in the spring of 2008. (Doc. 68, ¶ 65). Plaintiff and Defendant Lai began contacting members of the faculty and asked them to serve on her comprehensive exam committee. (*Id.* ¶ 66). While the operative memorandum of understanding stated that the "comprehensive exam should take place during the summer of 2008," (doc. 69-6), Defendant Lai scheduled Plaintiff's examination for May 1, 2008, in order to accommodate the schedules of the committee members and to avoid any disruption from summer schedules. (Doc. 68, ¶¶ 67-68). Plaintiff responded to Defendant Lai's email scheduling the exam, thanking him for the arrangement. (*Id.* ¶ 67; Doc. 80, ¶ 67).

Plaintiff's comprehensive exam committee ("Committee") consisted of Defendant Lai, Douglas Cavener, Stephen Schaeffer, Aimin Liu, and Yanming Wang. (Doc. 68, ¶ 73). Plaintiff completed her draft thesis proposal and submitted it to Defendant Lai for distribution to the Committee. (*Id.* ¶ 72). Three of five members of the Committee would have to pass Plaintiff in order for her to pass the exam. (*Id.* ¶ 75). While Defendant Lai and Dr. Cavener were aware that Plaintiff had filed a complaint against Defendant Ho, they were aware of neither its contents

nor its nature; no other member of the Committee was aware of the complaint. (*Id.* ¶¶ 76-77). The Committee unanimously failed Plaintiff on her May 1, 2008 comprehensive exam and unanimously voted not to allow Plaintiff to sit for the exam again. (*Id.* ¶¶ 79-80).

Defendant Lai thereafter informed Plaintiff that she did not need to return to his lab, and on June 5, 2008, Dr. Ma notified Plaintiff via letter that she would be terminated from the program for failure of the comprehensive exam. (*Id.* ¶¶ 81, 83). Plaintiff's appeal of this decision was initially denied by Dr. Ma. (*Id.* ¶¶ 84, 90). Plaintiff appealed the denial to Dr. Eva Pell, Senior Vice President for Research and Dean of the Graduate School, and Dr. Mark Wardell, Associate Dean of the Graduate School. (*Id.* ¶¶ 91-92). Drs. Pell and Wardell concluded that all of Plaintiff's reasons for appeal were groundless except for her argument regarding the exam's timing. (*Id.* ¶ 93). Drs. Pell and Wardell determined that Plaintiff's exam should have been scheduled in the "summer of 2008" pursuant to her memorandum of understanding, not in May of 2008, and thus permitted Plaintiff to retake the exam. (*Id.* ¶ 93).

Defendant Lai scheduled the exam for August 15, 2008, and notified Plaintiff. (*Id.* ¶ 97). Plaintiff raised new concerns to Drs. Pell, Wardell, Ma, and Lai regarding the new exam date but was informed that she would not be given another

opportunity if she did not appear for the exam. (*Id.* ¶ 99). Plaintiff did not appear for her second comprehensive exam on August 15, 2008, and the Committee unanimously failed her. (*Id.* ¶¶ 101-102). Dr. Ma notified Plaintiff that she was terminated from the CDB program, a decision upheld by Dr. Pell on appeal. (*Id.* ¶¶ 103-105).

## IV.  DISCUSSION

Plaintiff alleges that the Defendants, collectively and individually, conspired to discriminate and retaliate against her after she engaged in protected activity by reporting gender-based discrimination to Penn State police. She asserts that Defendants Ho and Lai created a hostile education environment riddled with gender-based discrimination and that Defendant Lai retaliated against her for reporting said discrimination by accelerating the date of her comprehensive exam. Plaintiff contends that Defendant Penn State is liable for permitting and adopting this culture of discrimination under both Title IX and § 1983. We address the Plaintiff's claims in the order raised in her Amended Complaint. (doc. 33).

### A.  Count I: Hostile Education Environment in Violation of Title IX Against Penn State

In Count I of her Amended Complaint, Plaintiff asserts a claim for a hostile education environment premised upon gender-based harassment pursuant to the anti-discrimination provision of Title IX. Plaintiff claims that Defendant Penn

State had actual knowledge of and deliberately failed to remedy student-on-student

gender discrimination which was so severe, pervasive, and objectively offensive as

to deprive to the Plaintiff of the benefits and opportunities provided by the school.

Defendant Penn State moves for summary judgment, contending first that Plaintiff

has failed to provide any record evidence substantiating her claims of sexual

harassment and second that Penn State adequately responded to the Plaintiff's

complaints. We agree with the Defendant as to both of its arguments.

The anti-discrimination provision of Title IX provides that "[n]o person in

the United States shall, on the basis of sex, be excluded from participation in, be

denied the benefits of, or be subjected to discrimination under any education

program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. The

Supreme Court of the United States has concluded that "discrimination" in the

context of Title IX includes a hostile education environment theory premised upon

student-on-student harassment in certain circumstances. *Davis v. Monroe Cnty. Bd.*

*of Educ.*, 526 U.S. 629, 650-52 (1999). In *Dawn L. v. Greater Johnstown School*

*District*, 586 F. Supp. 2d 332, 365 (W.D. Pa. Nov. 13, 2008), the court articulated

the elements of a hostile education environment claim as follows:

> To prevail on a claim of student-on-student sexual
> harassment under Title IX of the Education Amendments
> of 1972, the plaintiff must show that (1) the defendant
> received federal funds; (2) sexual harassment occurred;

(3) the harassment took place under circumstances wherein the funding recipient exercised substantial control over both the harasser and the context in which the harassment occurred; (4) the funding recipient had actual knowledge of the harassment; (5) the funding recipient was deliberately indifferent to the harassment; and (6) the harassment was so severe, pervasive, and objectively offensive that it could be said to have deprived the victims of access to the educational opportunities or benefits provided by the school.

*Id.* at 365.

"Damages are not available for simple acts of teasing and name-calling [between students], however, even where these comments target differences in gender." *Id.* at 652. Again, for the institution to be held liable as a result of student-on-student harassment, *Davis* requires severity, pervasiveness, and offensiveness to a degree that effectively denies the plaintiff equal access to her statutorily-protected right to education. *See id.* Penn State contends that Plaintiff has failed her burden of providing evidence supporting several elements of her claim, in particular, whether sexual harassment occurred, whether such harassment was of the degree contemplated by *Davis*, and whether Penn State responded with deliberate indifference. We address each of these arguments *seriatim*.

With respect to whether harassment occurred, we agree with Penn State that the record reveals a dearth of substantiated facts supporting that Defendant Ho engaged in sexual harassment "so severe, pervasive, and objectively offensive" as

13

to deprive the Plaintiff of her right to educational opportunities and benefits. As a threshold matter, we note that Plaintiff's submissions leave much to be desired with respect to factual support and record citation.[5] Here, Plaintiff cites only to her own interrogatory responses and to her Amended Complaint to support every relevant factual allegation. Indeed, this is the only "evidence" which Plaintiff cites to substantiate her claims. In effect, Plaintiff has followed a circular path by citing her unsupported conclusions in lieu of evidence of record.

Plaintiff cites to her interrogatory response for the assertions that Defendant Ho "felt resentful that he had to work with women," that he would yell at Plaintiff if he saw her walking to or from Defendant Lai's office because she was a woman, and advised her that Defendant Lai "had no time for her because she is a woman." (Doc. 80, ¶ 63). In her opposition brief, Plaintiff states that Defendant Ho made "comments to Plaintiff which denoted his general abhorrence for the female gender, including: 'How could you add anything to this field [you are only a

_____

[5] Plaintiff submits numerous broad–and, to some extent, inflammatory–assertions while offering no evidence, other than her own interrogatory answers–which critically were not filed with the Court–to substantiate them. Indeed, this lack of citation and support extends to all aspects of Plaintiff's case, not merely this one point. We admonish that "[j]udges are not like pigs, hunting for truffles buried in briefs, in the universe of legal precedent, or the record on summary judgment." *Smith v. Central Dauphin School Dist.*, 2007 WL 2262936, *6 (M.D. Pa. Aug. 6, 2007).  It is counsel's responsibility to the Court, and not the Court's independent obligation, to support Plaintiff's allegations with evidence of record. This Plaintiff has entirely failed to do. Plaintiff largely fails to cite any evidence other than her Complaint, and when she does, fails to cite *record* evidence, again and as noted relying only on a response to interrogatories never filed with the Court.

woman]?'; 'if you're having trouble, you should ask your husband for help [because you are just a woman]'; [and] 'Dr. Lai has no time for you, he is very busy and you are only a woman.'"[6] (Doc. 79, p. 10 (citing Plaintiff's Amended Complaint (doc. 33) and Plaintiff's Answer to Defendant's Interrogatories Nos. 11 and 16, never filed with the Court)).

Plaintiff's opportunity to rest on the bare assertions and conclusory allegations of her complaint has passed. The non-moving party cannot, at summary judgment, "rely on unsupported allegations;" instead, the non-movant must "go beyond the pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones*, 214 F.3d at 407. Plaintiff must now present to the Court record evidence which creates a genuine issue of material fact warranting submission of the case to a jury. It is insufficient for Plaintiff to rely on the entirely unsubstantiated allegations in her complaint in support of a denial of summary judgment. *See Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) ("To survive summary judgment, a party must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine

---

[6] We note, candidly, that it is suspect that the most relevant portions of the alleged quotations from the interrogatory put before this Court contain bracketed substitutions and alterations which seem to be intended to distort the evidence or mislead the Court, especially in light of the fact that the Plaintiff has failed to file a copy of the interrogatory responses as part of the record.

issue."); *see also Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) ("[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment."). Plaintiff also cites generally to the CDB Program Booklet, however a review of the same indicates that it provides no support for her contentions.

Even if we were to accept as true Plaintiff's unsubstantiated allegations regarding Defendant Ho's comments and demeanor toward her, precedent does not support institutional liability for teasing or like comments made from one student to another. To repeat, "[d]amages are not available for simple acts of teasing and name-calling . . . even where these comments target differences in gender." *Id.* at 652. This is exactly the kind of behavior of which Plaintiff complains. (*See* Doc. 79, p. 12 ("While Defendant Ho *chided and teased her*, moving to block her path as she tried to move the heavy container to her lab bench . . .) (emphasis added)). The same is insufficient to support a hostile education environment cause of action, even where such allegations are supported by record evidence. We will accordingly grant the Defendant's Motion as to Plaintiff's claims of a hostile education environment.

We further note that even had we concluded that Plaintiff had offered evidence as to sexual harassment so severe and pervasive as to interfere with her

education, which she decidedly did not, she has nonetheless failed to put forth evidence demonstrating that Penn State's response, upon learning of the alleged behavior, was unreasonable. As stated above, a critical element for institutional liability to attach is that the university must have had "actual knowledge" of the discrimination and must have acted with "deliberate indifference" upon learning thereof. *See Davis*, 526 U.S. at 644-45.

Plaintiff relies on her report to police dated February 21, 2008, as the first instance of "actual notice" to the University. Plaintiff, again citing only to her un-filed interrogatory responses, states that the police officer advised that Defendant Ho's actions were unlawful and that he would be disciplined, but that several days later, she was advised that no action would be taken against him because the only other student in the lab failed to corroborate Plaintiff's story. (Doc. 79, p. 13). The actual police report, however, makes no mention whatsoever of gender discrimination, (doc. 69-14),[7] and the investigating officer stated that the complaint

---

[7] The Allegation of Student Misconduct (doc. 69-14, p. 5) specifically details Plaintiff's complaint as follows:

> On 02/21/08, Yan contacted this department to report suspicious activity that was making her concerned when she worked in her lab, 123 Life Science Building. Yan reported her colleague, Ho, was acting in a manner that was becoming more and more suspicious. Yan [c]ited three different incidents where she and Ho had interaction. Yan stated approximately one month ago, she was try to move a carbon dioxide cylinder and when she asked Ho to assist her, he refused. The cylinder subsequently fell on top of her

was not one of gender discrimination of sexual harassment but instead of "personal conflict" (doc. 69-44, ¶ 5). Thus, the report can hardly be said to have placed Penn State on actual notice of Title IX gender discrimination violations.

Further, upon learning of the Plaintiff's claims and at Plaintiff's request, the Office of Judicial Affairs issued non-disciplinary administrative directives barring Defendant Ho from contact with Plaintiff and likewise banning Plaintiff from contacting Defendant Ho. (Doc. 68, ¶¶ 58-61). Plaintiff admits that the alleged "verbal attacks" ceased subsequent to these directives. (Doc. 68, ¶ 82; Doc. 80, ¶ 62).[8] Thus, to the extent that Plaintiff claims that Penn State's actions were insufficient to remedy the alleged harassment, such an argument is belied by her own admission that the harassment, however classified, ceased upon the issuance of the administrative directives. Accordingly, for this and all other reasons

---

> causing her to break three fingers in her right hand. Yan also stated while working in the lab, she often has to move out of the way for Ho to get by her. Yan believes Ho is walking in her way on purpose forcing her to move out of his way. Also, Yan remembers Ho moving equipment off of shelves over her head while she is working in the lab. Yan believes Ho is doing this to harm her and is afraid the items will fall on her head.

(*Id.*). As above noted, the police investigation commenced as a result of Plaintiff's general complaint is entirely devoid of sexual harassment or gender discrimination allegations.

[8] Plaintiff admits that the harassment ceased but contends, again without support, that "Ho continued to disrupt Plaintiff's samples and otherwise agitate her experiments." (Doc. 80, ¶ 62). However, even accepting this unsubstantiated assertion as true, such conduct does not amount to severe, pervasive, and objectively offensive *gender* discrimination.

discussed herein, we will grant the Defendants' Motion for Summary Judgment with respect to Count I of Plaintiff's Amended Complaint.

### B.   Count II: Retaliation in Violation of Title IX Against Penn State

Plaintiff next contends that Defendant Penn State retaliated against her for engaging in protected activity, specifically reporting sex or gender discrimination to University police and, later, to a Judicial Affairs officer. She asserts that after she reported the alleged discrimination, Defendant Lai and other administrators "campaign[ed] to exclude her from the program" and did so "with the intent to retaliate against [her] for having protested Title IX violations." (Doc. 33, ¶ 45).

To prevail on the merits of her Title IX retaliation claim against Penn State, Plaintiff must prove that Penn State "retaliated against [her] *because* [she] complained of sex discrimination." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005) (emphasis in original). This Court has previously articulated the elements of a Title IX retaliation claim, holding that "[a] prima facie case of retaliation is established when a plaintiff shows (1) she was engaged in protected activity; (2) the plaintiff experienced a materially adverse action after or contemporaneously with the protected activity; and (3) a causal link exists between the protected acvitity and the adverse action." *Cabrera-Diaz v. Penn Kidder Campus Jim Thorpe Area Sch. Dist.*, 2011 U.S. Dist. LEXIS 13466, *10 (M.D. Pa.

19

Feb. 11, 2011).

As an initial matter, there is again a dearth of record evidence establishing that Plaintiff complained specifically about gender discrimination. Indeed, the only evidence of record on this point indicates that Plaintiff complained only of general personality conflicts or dislike. Officer Brooks, the investigating police officer, stated that Plaintiff's "complaints were not presented as raising claims of gender-based discrimination or sexual harassment. Instead, this matter appeared to be a personal conflict between Yan and Ho." (Doc. 69-44, ¶ 5). Karen Feldbaum, the Associate Director for Judicial Affairs, who investigated Plaintiff's complaint following the police report, stated that "I had no indication that the concerns described by Yan were gender-based discrimination or sexual harassment." (Doc. 69-46, ¶ 11). She also characterized the issue as a "personal conflict between Yan and Ho." (*Id.*).[9] General complaints regarding uncivil conduct and simple dislike are insufficient to satisfy the first prong of a Title IX retaliation complaint. *See, e.g.*, *Barber v. CAX Distribution Servs.*, 68 F.3d 694, 701 (3d Cir. 1995) (in Age Discrimination in Employment Act ("ADEA") case, general allegation of being "treated unfairly" insufficient).

---

[9] As previously noted, while Plaintiff cites generally to her interrogatory responses to support her argument that she did "clearly and unambiguously" identify Defendant Ho's conduct as gender-based discrimination and harassment, these interrogatory responses have not been provided to the Court and are thus not evidence.

While failure of one element is sufficient to enter judgment in Penn State's favor on this claim, we note only briefly that, assuming *arguendo* that Plaintiff had engaged in protected activity, she has nonetheless failed to submit *any* evidence to support her claim that she suffered an adverse action causally related to said activity. Plaintiff asserts that Defendant Lai accelerated her exam date—leaving her with insufficient time to study and ultimately resulting in her dismissal from the program—because of her report. (Doc. 79, p. 17). Critically, as the Defendant notes, even if scheduling an anticipated exam in some way constitutes an "adverse action," any adverse effect was remedied by the University when it offered Plaintiff a second opportunity to take the examination on August 15, 2008—an opportunity Plaintiff flatly rejected. (Doc. 69-37). Plaintiff again supports her adverse action argument only by citation to her Amended Complaint and her response to Defendant's Interrogatory Number 11, the former of which is not evidence for summary judgment purposes and the latter which cannot be considered for failure to place it in the record. Fed. R. Civ. P. 56(e)(2) (The party opposing summary judgment "may not rely merely on allegations of denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.").

A review of the record clearly indicates that there remain no genuine issues

21

of material fact for trial. On the record before us, we must conclude that Plaintiff has failed to meet her evidentiary burden with respect to her Title IX retaliation claim and grant summary judgment to Defendant Penn State on Count II of Plaintiff's Amended Complaint.

**C.     Count III: First Amendment Retaliation under § 1983 Against All Defendants**

In Counts III and IV of her Amended Complaint (doc. 33), Plaintiff asserts claims for retaliation pursuant to 42 U.S.C. § 1983, contending that the collective Defendants have unlawfully retaliated against her for exercise of her constitutional rights in violation of the First Amendment (Count III) and in violation of the Constitution's guarantees of equal protection (Count IV). (Doc. 33, ¶¶ 53-61). The Defendants raise several arguments in response to these assertions. Defendants Lai and Ho contend that they are not "state actors" subject to § 1983 liability. Penn State asserts that Plaintiff has failed to identify an official policy of discrimination pursuant to *Monell* and its progeny. In addition to these threshold issues, the Defendants collectively attack the merits of Plaintiff's claims. As previously, Plaintiff responds with unsubstantiated argument and fails to direct the Court to any evidence of record supporting either of these two claims.

**1.     Has Plaintiff established an official policy of discrimination created by Defendant Penn State?**

In *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978), the Supreme Court held that a government entity may only be subject to § 1983 liability where a plaintiff establishes that the entity sanctioned or caused the adoption or implementation of a governmental policy, regulation, or decision which, in turn, "actually caused the alleged constitutional transgression." *Id.* at 691. Plaintiff contends that Defendant Lai's violation of two Penn State policies is sufficient to establish an official policy of discrimination subjecting it to § 1983 liability. Defendant Penn State responds that the record does not establish that it caused, adopted, or implemented any wide-spread custom or policy of gender-based discrimination. We agree with Defendant Penn State.

Plaintiff identifies two official Penn State policies to which she attributes her harm. She states that "it is the policy of the Graduate School to allow students to transfer comprehensive examinations from one field of study to another" and that "the Plaintiff's PHD Agreement, executed between [Defendant Lai] and Plaintiff mid-2007, which stated that Plaintiff's comprehensive exam was to take place during the 'summer of 2008.'" (Doc. 79, p. 22). She contends that Defendant Lai failed to follow either policy and goes on to broadly conclude that "[t]he actions of *Penn State* to deliberately disregard two of its Graduate School policies combined to deprive Plaintiff of her constitutional right to access education without regard to

her gender." (*Id.* at p. 23) (emphasis added). This argument, however, fires well wide of the mark.

It has long been established that a governmental entity cannot be held liable under a *respondeat superior* theory and that there must be an official municipal or governmental policy responsible for the alleged deprivation of constitutional rights. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575 (3d Cir. 2003) (quoting *Monell*). As emphasized above, the alleged policy must be attributable to the government entity itself; thus, the mere failure of a professor to abide by a policy, unless sanctioned or in some form adopted by the University, is insufficient to establish that the University itself has created an official policy or practice of discrimination. Indeed, the record evinces that the University *disagreed* with Defendant Lai's decision to schedule Plaintiff's exam date in May and permitted Plaintiff to sit for the exam a second time in August–an opportunity Plaintiff rejected–thus clearly rebutting Plaintiff's argument that Penn State supported these alleged discriminatory practices. (*See* Docs. 69-38, 69-39). Accordingly, there is no genuine issue of fact remaining as to whether Defendant Penn State created a policy or pattern of gender-based discrimination and Penn State is entitled to summary judgment on Plaintiff's First Amendment and Equal Protection claims.

### 2.     Has Plaintiff established that Defendants Lai and Ho are

**state actors subject to § 1983 liability?**

In order for liability to attach individually to either Defendant Ho or Defendant Lai, Plaintiff must establish that each individual was a "state actor" acting under "color of law." *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 24 (3d Cir. 1997). As the Defendants accurately note, the Third Circuit has described this requirement as follows: "If a state entity places an official in the position of supervising a lesser-ranking employee and empowers him or her to give orders which the subordinate may not disobey without fear of formal reprisal, that official wields sufficient authority to satisfy the color of law requirement of 42 U.S.C. § 1983." *Id.* at 24-25.

The defendant must be in a supervisory position as relates to the plaintiff in order to have acted under color of state law. *Id.*; *see also Zelinski v. Pa. State Police*, 108 F. App'x 700, 703 (3d Cir. 2004) (police officer could not bring § 1983 claim against fellow officer where neither held supervisory authority over the other). Specifically, we must query whether Defendants Lai and Ho "wielded considerable control over a subordinate whose work [they] regularly supervise[]" and had the authority to give orders to Plaintiff which she could not disobey without fear of formal reprisal." *Bonenberger*, 132 F.3d at 23-25.

The record evidence does not establish that Defendant Ho wielded this

degree of supervision or control over Plaintiff. No evidence of record indicates that Defendant Ho had authority to discipline or otherwise reprimand Plaintiff for disobedience. Plaintiff cites again to her Amended Complaint and her unfiled interrogatory responses for the proposition that Defendant Ho was a senior member of the laboratory team charged with the responsibility of ordering supplies and addressing the other students' questions. (Doc. 79, p. 21). This alone, however, absent evidence that Defendant Ho had any authority to supervise, discipline, or otherwise reprimand Plaintiff is insufficient to rise to the level of "considerable control" or a power granted by the state. There are simply no facts of record indicating that Defendant Ho exercised supervisory control over Plaintiff. Accordingly, the Court will grant summary judgment in favor of Defendant Ho on Counts III and IV.

Our analysis differs, however, with respect to Defendant Lai. Defendant Lai was Plaintiff's thesis advisor and oversaw her work in the lab as part of the CDB program. The Defendants admit in their brief that "Dr. Lai had certain supervisory authority over Yan," while pointing out that he was not personally responsible for the University's requirement that Plaintiff take a comprehensive examination as part of the CDB program. (Doc. 70, p. 18). However, it is the accelerated date for her exam that Plaintiff complains was retaliatory, and this decision, while subject

to appeal, was directly in Defendant Lai's control. Drawing all inferences in the light most favorable to the Plaintiff as we must at this stage, we conclude that a reasonable trier of fact could find that Defendant Lai had supervisory authority over the Plaintiff and was "personally involved in the denial of" Plaintiff's constitutional rights or "promulgated a policy that caused the harm." *See Miszler v. Shoemaker*, 2007 U.S. Dist. LEXIS 40409, *29 (M.D. Pa. June 4, 2007).

Thus, the only Defendant for whom we proceed to a merits analysis with regard to Counts III and IV is Defendant Lai. After a review of the merits of both claims, we conclude that while Plaintiff has overcome the first barrier and established that Defendant Lai was a state actor vested with some degree of supervisory authority, she has nonetheless failed in her evidentiary burden on the merits of both her First Amendment and Equal Protection claims.

### 3. Do Genuine Issues of Material Fact Exist With Regard to the Merits of Plaintiff's First Amendment and Equal Protection Claims?

Plaintiff asserts that Defendant Lai retaliated against her after she engaged in protected speech in violation of the First Amendment. She also asserts that Defendant Lai discriminated against her, repeatedly treating male students more favorably, in violation of the Constitution's guarantees of equal protection of the laws. We address each claim in turn and for the reasons that follow conclude that

neither is of any merit.

### a.     First Amendment

Plaintiff contends that Defendant Lai retaliated against her for engaging in the following allegedly protected acts of speech: reporting Defendant Ho to the University Police; filing a notice of job-related injury with the University; and filing a Workers' Compensation claim with the government. Plaintiff contends that Defendant Lai retaliated against her by accelerating the date of her comprehensive examination, which she ultimately failed and refused to retake, leading to her dismissal from the program. Assuming *arguendo* that the first and second elements are met, the record nonetheless fails to establish the requisite causal causation between Plaintiff's engagement in protected speech and the scheduling of her comprehensive examination.

In *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 269 (3d Cir. 2007), the Third Circuit articulated the following as the salient factors of a First Amendment retaliation claim factors: first, that the plaintiff engaged in protected activity, second that the defendant retaliated in such a way sufficient to deter a reasonable person from engaging such protected activity, and third that there exists a causal connection between the first and second elements. *Id.* at 267. Absent a causal connection, a First Amendment retaliation claim must fail. *Id.*

Again, as throughout our analysis, we note that Plaintiff has not provided the Court with any evidence of record in support her claims. The only evidence of record demonstrates that Defendant Lai selected May 1, 2008 as the date for Plaintiff's comprehensive examination in order to better accommodate the schedules of the professors chose to sit on the examination committee. (Doc. 68, ¶ 68). Plaintiff provides the Court with no evidence to contradict this statement aside from her own speculation in her responsive statement of facts that faculty members have more flexible schedules and free time in the summer than during finals in the spring. (Doc. 80, ¶ 68). Absent arguments submitted in Plaintiff's brief, which (like Plaintiff's speculation in her responsive statement of facts) are not evidence and cannot carry her burden at summary judgment, *see Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d at 1109-10, Plaintiff presents no evidence to contradict this statement. Thus, Plaintiff has failed in her burden and Defendant Lai is entitled to summary judgment on the First Amendment claim.

### b.    Equal Protection

Plaintiff also contends that Defendant Lai treated her differently because of her gender thus subjecting him to liability under the Equal Protection Clause. Both parties agree with regard to the law on the issue: to establish a *prima facie* case of gender-based discrimination warranting liability under the Equal Protection

Clause, a plaintiff must establish that she is a member of a protected class and that she was treated differently than other similarly situated-individuals who are not members of the protected class. *See Oliveira v. Twp. of Irvington*, 2002 U.S. App. LEXIS 14913, *11 (3d Cir. 2002) (unpublished opinion); *Fiala v. Bogdanovic*, 2009 U.S. Dist. LEXIS 93993 (M.D. Pa. Oct. 8, 2009).

In her brief in opposition to summary judgment, Plaintiff asserts that two male students were treated more favorably than she by Defendant Ho. (Doc. 79, p. 24). Plaintiff's only argument with respect to Defendant Lai is that "genuine issues of material fact exist as to whether [male students'] comprehensive examinations were scheduled prior to the time period contemplated in their PhD Agreements with Defendant Lai." (Doc. 79). In fact, quite the opposite is true: *no* issues of material fact exist because Plaintiff has not provided any evidence supporting this contention.

Despite Plaintiff's failure to cite to record evidence supporting her claims, the Court has endeavored, in all fairness to Plaintiff, to review the record independently and has observed an absolute dearth of evidence supporting her contention that Defendant Lai purposely discriminated against female students. Quite simply, no record evidence exists indicating that Defendant Lai has treated male students more favorably than Plaintiff or, more generally, than female

students on the whole. The allegation regarding Defendant Lai's two male students is nothing more than unabashed speculation on the Plaintiff's part, contemplated for the first and only time in her opposition brief and entirely unsupported by the evidence. Accordingly, we will grant the Defendants' Motion for Summary Judgment with respect to Plaintiff's Equal Protection claims.


## V.     CONCLUSION

As the Third Circuit has previously admonished: "Summary judgment is essentially 'put up or shut up' time for the non-moving party; the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral arguments." *Berckeley Inv. Group, Ltd. v. Cokitt*, 455 F.3d 195, 201 (3d Cir. 2006). Plaintiff may not simply rest on her laurels once litigation has progressed to the summary judgment phase; she must demonstrate to the Court that a factual basis exists from which a reasonable jury could find in her favor. Plaintiff has failed utterly in this endeavor. Because Plaintiff has failed to put before the Court *any* record evidence substantiating her claims or demonstrating that arguments set forth in her brief are anything beyond mere speculation, the Court will grant the Defendants' Motion for

Summary Judgment (doc. 67) in its entirety and enter judgment in the Defendants'

favor on all counts of the Plaintiff's Amended Complaint (doc. 33). An appropriate

order shall issue.